MUNDELL (UNITED STATES v.). See Case No. 15,834.

MUNFORD (ALSTON v.). See Case No. 267.

MUNFORD v. BALCH. See Case No. 790.

---

## Case No. 9,923.

In re MUNGER et al.

[4 N. B. R. 295 (Quarto, 90).] [1]

District Court, W. D. Michigan. 1870.[2]

BANKRUPTCY — FRAUDULENT INTENTION — INSOLVENCY—COMPROMISE—BONA FIDES.

1. Where there is no fraudulent intention, a dealer may, although insolvent, continue to sell his stock at retail, and endeavor to effect, if possible, a compromise with his creditors.

2. Where a trader makes a compromise with his creditors by making a sale of his stock, giving to the creditors part cash and part notes of the purchaser, the same being done in pursuance to an arrangement made with some of the creditors directly, and others through an agent, there is no fraud on the part of the debtor if an agent of one or more of the creditors exceeds his authority in accepting the compromise and the debtor is ignorant thereof.

3. When one debtor accepts a certain sum as a compromise, and he is not led to believe that he was getting as much as others, and he accepts the notes of his debtor's purchaser in part payment, he cannot be sustained in a petition against the debtor alleging a preference thereby under the bankrupt act [of 1867 (14 Stat. 517)].

In bankruptcy.

Dickinson & Dickinson and George Gray, for petitioners.

L. S. Hodges, for respondents.

WITHEY, District Judge. Curren, Goodwin, Walker & Co., petition to have Munger & Champlin, copartners, declared bankrupts. There are five acts of bankruptcy charged, which I shall consider as involving but three questions. The first act charged is, that respondents, being insolvent, sold and transferred to divers persons, from time to time, portions of their stock in trade with intent to defeat the operation of the bankrupt act, in this; they ascertained, January 3d, 1870, by taking account of stock, that their liabilities exceeded their assets by about sixteen thousand dollars, and thereafter, in January, February, March, and up to about the 18th day of April, they were endeavoring to effect a compromise of their debts, but were unsuccessful, and at the same time were selling goods from their store to customers in the ordinary way of trade. It is claimed that they thus conducted their business with intent to prevent proceedings against them in bankruptcy, and with intent to defeat the

1 [Reprinted by permission.]
2 [Reversed in Case No. 3,487.]

operation of the law. The proofs show that respondents were not only insolvent, but knew they were; that some time in February they endeavored to effect a compromise of their debts at fifty cents, and were not successful, and afterwards in March and April, they sought again to effect a compromise at thirty-five cents, during all which period they continued trading at their store in Kalamazoo as usual, selling to customers at retail from day to day. But there is no proof of intent to defeat the operation of the bankrupt act, unless that kind of management of their business raises the presumption of such intent. In my opinion it does not; on the contrary, their efforts to settle with creditors without going through bankruptcy in court, was entirely legitimate, not prohibited by any provision of the bankrupt law; and continuing to sell goods in the usual way of trade, pending such negotiations, was entirely proper and justifiable, and what they ought to have done, so long as their intention was not fraudulent. Undoubtedly if the proofs showed an intention by the debtors to so conduct their business as to avoid paying their debts, or to prevent their property being applied to the payment of their debts under the provisions of the bankrupt law; preventing proceedings in bankruptcy against them with a view to defeat the provisions of the act, then would be shown such an intent as to require that they be decreed bankrupts. But I find no such fraudulent purpose from the proofs in this case.

Then follows three distinct acts of bankruptcy, but as they raise but one question, I shall consider them together. That question is whether a transfer made by respondents of all their assets not exempt, to George M. Colt, on or about April 18th, 1870, Colt being liable for them as indorser, was with intent either to prefer Colt, or to defeat the operation of the bankrupt act. It is shown that when respondents failed to effect a compromise at fifty cents, they made an effort to get a settlement at thirty-five cents. To this end one of the firm went to New York City, secured a meeting of a majority of their creditors there, stated to them their assets and debts, and asked a settlement at thirty-five cents. Nothing definite was then accomplished, but some of the creditors thought the debtors better keep their store open for the time being, and keep their stock replenished, and do the best they could until something definite could be done. Not long subsequently to that visit to New York, Tefft, Griswold & Kellogg of that city, filed against them a petition to have them declared bankrupts, Mr. Hodges, of Chicago, being attorney for such petitioning creditors. After filing the petition and procuring an order against respondents to show cause, he went to Kalamazoo, saw respondents and Mr. Colt, as a merchant of that place, and then learned that Colt was willing to purchase

their assets at a sum which should not exceed forty cents on a dollar of respondents' liabilities, by his notes at six and twelve months, provided respondents could be freed from all their liabilities. Colt was the father-in-law of the respondent Champlin, was fully advised as to their assets and liabilities, was indorser on some of their paper; no question is made but that Colt is perfectly responsible. Hodges thought that the debts could be arranged on that basis, and was employed by respondents to secure the best terms he could from creditors. He accordingly visited New York, Chicago, and other places, and obtained such terms from a portion of the creditors, that although some of them demanded full pay, the aggregate did not exceed forty cents on a dollar of respondents' liabilities. Hodges now visited Kalamazoo again, and informed respondents and Colt of the result of his negotiations, exhibiting his authority from most of the creditors who accepted less than one hundred cents on a dollar of their claims. The result was satisfactory to Colt, inasmuch as by paying a sum equal to forty cents of respondents' debts, they could be released from liability, and his title to the goods be thereby unquestioned. He accordingly took a transfer of their assets, gave his notes payable at six and twelve months to the respective compromising creditors. and agreed to settle with and pay all others of their creditors who had not made compromise terms. Munger & Champlin also signed the compromise notes. Hodges took the notes, transmitted them to creditors, and discontinued the proceedings in bankruptcy against respondents. Colt has settled, or arranged with all the other creditors satisfactorily, at least there is no proof of dissatisfaction on their part. The only difficulty arising out of that sale, and the transactions connected with it, and affording the foundation for this case, is that Curren, Goodwin, Walker & Co., of New York, who bring forward this second petition against respondents, and on which this trial is had. authorized Hodges to take for their claim thirty-five cents cash, and Munger & Champlin's note for fifteen cents, making fifty cents; whereas, Hodges accepted thirty-five cents by Colt's and Munger & Champlin's notes at six and twelve months. Hodges informed Munger & Champlin and Colt of the terms named by these creditors on his second visit to Kalamazoo, but he was then and there shown a letter written by a Mr. Clark, from New York, to Mr. Colt, in which he states that Curren, Goodwin, Walker & Co. had informed him, after Hodges left New York, that they would take thirty-five cents. Clark was a partner of Colt's, and this letter induced Colt to believe that these creditors had authorized a settlement of their claims at thirty-five cents. It also seems to have induced Hodges to accept that sum. Hodges now said to Colt, and to Munger & Champlin, who also knew of Clark's letter, that he

was the attorney of Curren, Goodwin, Walker & Co., authorized to act for them, and he would accept for them thirty-five cents in Colt's, and Munger & Champlin's notes at six and twelve months. Hodges received all the notes, and transmitted them to the respective creditors. The petitioners returned to Hodges the notes sent them, saying that they did not sanction the settlement, and should now expect payment in full, and they soon after filed their petition in this case.

The question is whether Munger & Champlin, in view of these facts, are shown to have intended, by their sale to Colt, either to prefer Colt or to defeat the operation of the bankrupt act. Hodges was agent for Munger & Champlin, for the sole purpose of receiving from creditors the best terms they would respectively make, and, if possible, such terms as would enable them to sell to Colt, and, with the proceeds of the sale, satisfy their entire debts. He was agent of Curren, Goodwin, Walker & Co., to accept for them thirty-five cents cash, and M. & C.'s paper for fifteen cents. When he accepted anything less or different, his action did not bind them, and therefore it is undoubtedly true that there was no authorized settlement of this particular claim. Nevertheless, Hodges informed both the respondents and Colt that he was authorized to act for Curren, Goodwin, Walker & Co. outside of the restricted terms he at first announced, and they believed him, and acted in pursuance of such representation in good faith. Are respondents guilty of an act of bankruptcy in making that sale to Colt, when they acted in the belief that the terms made by a large majority of their creditors would enable them to satisfy all demands against them? If so, it must be because they can justly be said to have intended thereby either to prefer Colt or defeat the operation of the bankrupt act. Mr. Justice Swayne, in Langley v. Perry [Case No. 8,067], says: "The innocence or guilt of the act depends on the mind of him who did it, and it is not a fraud within the meaning of the bankrupt law, unless it was meant to be so." Now the real question is, whether, in fact, Munger & Champlin meant to accomplish either of the guilty acts charged, or whether, in judgment of law, they must be held to have so intended, because the transfer necessarily had the effect to prefer Colt, or to defeat the operation of the law.

My opinion, as already intimated, is that, in fact, they had no such intention; on the contrary, they acted upon the representation of Hodges in good faith, and in the full belief that he was authorized to settle for Curren, Goodwin. Walker & Co. at thirty-five cents, by Colt's notes at six and twelve months. And I am not able to say they must have known the effect of acting upon Hodges' representations that he was authorized to settle at thirty-five cents, would be to prefer Colt, or to defeat the operation of

the law. If they had believed that Hodges was not authorized to take thirty-five cents for Curren, Goodwin, Walker & Co., then, in judgment of law, they should be held to have known that the effect of this sale would be a fraud on the law. In no other view should such rule be applied to them. They cannot, therefore, as it seems to me, be held to have intended a fraud. How can they be said to have known that Curren, Goodwin, Walker & Co. would not accept thirty-five cents, unless they first knew that Hodges was not authorized to settle for thirty-five cents? If they believed what Hodges represented as to his authority, how can they be said to have intended a fraud on the act in any particular? It might be claimed, as Hodges was acting as their agent in procuring terms of settlement from creditors, any fraud or misrepresentation on his part, by which one or more creditors were not settled with, would be the act or fraud of his principals, and the effect of the agent's fraud being to give a preference and to defeat the operation of the law, respondents should be held to have intended the act charged against them. But, if such be the rule, there are two objections in my mind to its application here. One I have already stated, that Hodges was not the agent of respondents in anything wherein he assumed to act for creditors. Curren, Goodwin, Walker & Co. saw fit to authorize Hodges to accept a certain sum, viz., thirty-five cents cash and fifteen cents in notes, making fifty cents, by verbal authority. He was their agent to do this, and, when he exceeded his authority, he did not thereby become the agent of the debtors. He was the agent of both parties: for one to obtain the best terms he could; for the other to accept a stipulated amount; so that, if Hodges acted with a fraudulent intent in accepting thirty-five cents, he cannot be said to have been the agent of the debtors in so doing. When it came to the transaction of transferring the goods and taking Colt's paper in payment, Munger & Champlin acted for themselves. In accepting that paper for creditors, Hodges acted for those creditors whose agent he was, and not for the debtors. The other objection is, that the proofs do not show that Hodges intended any fraud; on the contrary, although he exceeded his authority, I incline to the opinion that he regarded Clark's letter as justifying his acceptance of thirty-five cents for Curren, Goodwin, Walker & Co.

The remaining act of bankruptcy charged is that the transfer of Colt's notes to the compromise creditors, was with intent to prefer one or more of them. I have already stated that the notes given by Colt for the stock of goods were made payable to the respective creditors who had agreed to terms of compromise, and were passed over to Hodges by Munger & Champlin for those creditors, and that he did transmit to such creditors the notes. In turning such notes over to creditors, respondents were carrying out their proposed plan of settling their debts, and in the belief that thereby, and by Colt's assumption of the uncompromising debts, all their liabilities would be settled. If Curren, Goodwin, Walker & Co.'s debt had in fact been settled as respondents supposed it was, there could be no claim that a fraud on the provisions of the law had been intended, by preference or otherwise, for all debts would then have been satisfied or arranged for, on just the terms creditors had respectively seen fit to make. Now, clearly to my mind, respondents believed they had accomplished just that result. True they have not, as it turns out, settled their indebtedness to petitioning creditors, because the agent exceeded his authority in making terms, but there was good ground for them to believe that Hodges was authorized, and that this debt, like their other debts, was arranged. So that when they turned Colt's notes over to creditors, there was evidently no intent other than to consummate the arrangement of all their liabilities, on what they regarded as an agreed and accepted basis.

It should be remarked that there is no testimony tending to show that terms were obtained from creditors upon any misrepresentation or concealment; each creditor seems to have made terms without reference to the amount any other creditor was to receive. There is no evidence to show that any creditor was led to believe he was getting as much as others. There is no pretence that there was any such representation by Hodges or the debtors. A creditor may make as favorable terms with his debtor as he pleases, and if less is accepted, in view of the debtor's circumstances than others receive, the creditor is nevertheless bound by his settlement. This feature of the proof is not unimportant with reference to the questions in controversy, and has led me to regard the compromise and arrangements of the debtors with their creditors precisely as though each creditor had compromised at the same rate per cent. The charges are not, in my opinion, sustained. The petition is dismissed.

[Upon appeal to the circuit court the decree dismissing the petition was reversed, and an adjudication of bankruptcy ordered. Case No. 3,487.]

MUNGER (CURRAN v.). See Case No. 3,487.

MUNGER (POSTMASTER GENERAL v.). See Case No. 11,309.